**REDMAN HOME BUILDERS CO., Plaintiff,**

v.

**Andrew LEWIS and Mary Lewis, Defendants.**

No. CV–2:07–107.

United States District Court,
S.D. Alabama,
Northern Division.

May 29, 2007.

Order Amending Judgment
In Part July 25, 2007.

Lee E. Bains, Jr., Matthew Lee Huffaker, Thomas W. Thagard, III, Maynard, Cooper, and Gale P.C., Birmingham, AL, Wayne Scott Simpson, Ritchey & Simpson, PLLC, Birmingham, AL, for Plaintiff.

David G. Wirtes, Jr., John T. Crowder, Jr., Edwin Lamberth, Richard Edwin Lamberth, Steven L. Nicholas, Cunningham, Bounds, Crowder, Brown, & Breedlove, LLC, Mobile, AL, for Defendants.

## ORDER

KRISTI K. DUBOSE, District Judge.

This matter is before the Court on defendants' "Motion to Dismiss" (Doc. 11) brief in support (Doc. 12) filed March 9, 2007 and supplemental brief in support (Doc. 16) filed March 30, 2007; plaintiff's response in opposition thereto (Doc. 17) filed April 6, 2007, and defendants' reply brief, (Doc. 22) filed April 25, 2007. Upon consideration, and for the reasons set out more fully below, defendants' motion to dismiss is **GRANTED.**

## I. *PROCEDURAL HISTORY*

On February 13, 2007, plaintiff, Redman Homes, Inc., ("Redman" or "plaintiff")

pursuant to the Federal Arbitration Act 9 U.S.C. § 4 [1], filed a complaint and petition to compel arbitration against defendants Andrew Lewis and Mary Lewis ("Lewises" or "defendants"). (Doc. 1) Redman alleges that the filing of its' petition was instigated by the Lewises' "improper filing of a demand for a purported class action arbitration. . . ." (*Id.* at 1) Redman seeks a declaration that the Lewises's class arbitration demand is "contrary to Alabama law, is in direct contradiction of Defendant's Arbitration Agreement and is impermissible." (*Id.* at 15) In addition, Redman seeks injunctive relief in that it requests that this Court "compel" the Lewises to "arbitrate their dispute as expressly provided in the Arbitration Agreement." (*Id.* at 4)

On March 9, 2007 the Lewises filed the instant motion to dismiss on the grounds, in sum, that this Court lacks subject matter jurisdiction over this action. (Docs.11, 12) The Lewises filed a supplemental brief on March 30, 2007. (Doc. 16) In opposition to the motion to dismiss Redman maintains that the Court has jurisdiction under the Federal Arbitration Act 9 U.S.C. § 4 and 28 U.S.C. § 1332. (Doc. 17) The defendants' motion to dismiss has been fully briefed and is now ripe for this Court's consideration.

## II. *FACTUAL BACKGROUND*

1. On or about September 9, 2002, the Lewises purchased a Redman manufactured mobile home from Future Housing, which is located in Tuscaloosa County, Alabama. (Doc. 1, ¶ 8.) At the time of the purchase of the home, Redman provided the Lewises with a one-year limited warranty that contained the following arbitration agreement:

### ARBITRATION AND LIMITATION OF REMEDIES:

It is agreed that any controversy, claim or dispute between or among the Manu-

---

1. 9 U.S.C. § 4 provides as follows:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. Five days' notice in writing of such application shall be served upon the party in default. Service thereof shall be made in the manner provided by the Federal Rules of Civil Procedure. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is within admiralty jurisdiction, the court shall hear and determine such issue. Where such an issue is raised, the party alleged to be in default may, except in cases of admiralty, on or before the return day of the notice of application, demand a jury trial of such issue, and upon such demand the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose. If the jury find that no agreement in writing for arbitration was made or that there is no default in proceeding thereunder, the proceeding shall be dismissed. If the jury find that an agreement for arbitration was made in writing and that there is a default in proceeding thereunder, the court shall make an order summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

facturer, homeowner, independent dealer, finance company or any other person or entity arising from or relating to the Manufactured Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition, the manufacturers limited warranty, any contract or any alleged promise, representation, agreement or instrument relating to or delivered in connection with the Manufactured Home, or any alleged breach thereof, and any claim based on or arising from an alleged tort or claim of any kind whatsoever, including any claim relating to the validity of this arbitration provision [collectively "Claim(s)"], and if the Claim(s) cannot be resolved through direct discussions or negotiations, the Claim(s) first shall be mediated as administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to binding arbitration. Thereafter, any unresolved Claim(s) shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and any judgment on the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. All fees and expenses of the mediation or arbitration shall be borne by the parties equally, unless otherwise agreed in writing. Moreover, each party shall bear the expense of its own counsel, experts, witnesses and other costs, including preparation and presentation of proofs. All mediation or arbi-

tration proceedings shall be conducted in the jurisdiction of the original retail sale or at any other place selected by agreement of all parties.

IT IS AGREED AND UNDERSTOOD THAT THE PARTIES ARE KNOWINGLY GIVING UP AND WAIVING CERTAIN RIGHTS TO TRIAL BY JURY. This arbitration and limitation of remedies provision is part of the manufacturers limited warranty for the Manufactured Home and shall be binding on and inure to the benefit of the parties respective heirs and assigns.

(Doc. 1, Ex. 1, p. 10.) [2]

2. A dispute arose between the parties regarding the condition of the Lewises' manufactured home. On July 31, 2006 counsel for the Lewises submitted a demand to arbitrate their claims against Redman [3] with the American Arbitration Association ("AAA"). At that time counsel for the Lewises forwarded a check in the amount of $375.00 to the AAA along with the arbitration demand. (Doc. 12 at Exhibit A)

3. Over the next several months correspondence was exchanged between counsel for the parties regarding the arbitration and the possibility of pre-arbitration mediation as set out in the arbitration agreement. (Doc. 12, Exhibits B, C, D, E.)

4. On September 28, 2006, Redman submitted a proposed "Agreement to Mediate and Arbitrate", wherein the parties would first mediate their dispute and then, if unsuccessful, arbitrate the claims. (Doc. 12, Exhibit B.) [4]

**2.** The arbitration agreement is silent as to consolidation of arbitrations and class wide arbitrations.

**3.** In the underlying complaint, the Lewises allege, in sum, that Redman Homes "maintained that the subject home was a good home that was safe, durable, and worth a certain value or the price paid and sup-

pressed the fact that the defendants knew or should have known of the subject home's defective design and construction, its condensation problems, its excessive moisture problems...." (Doc. 12, Exhibit A)

**4.** This appears to be the proper procedure as envisioned in the arbitration agreement made part of the manufacturer's warranty.

5. In an October 2, 2006 letter, counsel for the Lewises rejected the mediation/arbitration proposal, stating:

"In response to your recent letter dated September 28, 2006, the proposed mediation and arbitration agreement you attached is unacceptable. Please let us know the names of potential arbitrators before whom your client will agree to arbitrate *before the parties spend additional time and money to arbitrate through the AAA* so that we can see after our review if the parties can agree upon an arbitrator to resolve the claims in this dispute."

(Doc. 12, Exhibit C) (emphasis added)

6. By letter dated October 3, 2006 counsel for Redman acknowledged the Lewises' rejection of the agreement and invited the Lewises to "make any changes you feel are necessary so that we can consider a proposed agreement from you. Your letter gave us no indication as to why the agreement is unacceptable, but we are glad to work with you in coming to some type of agreement to proceed through arbitration." (Doc. 12, Exhibit D)

7. On October 6, 2006, the Lewises further explained their objection to the proposed Agreement to Mediate and Arbitrate as follows:

As you know, the parties already agreed to resolve this dispute through arbitration. The proposal that you suggested for arbitration is unacceptable. *We intend to resolve these claims through the American Arbitration Association based upon the agreement between the parties to arbitrate. In the alternative, please provide us with the names of any potential arbitrators before whom your clients will agree to arbitrate. We will consider any potential arbitrators you suggest to determine whether the parties*

*can agree upon any arbitrator outside the AAA forum.*

(Doc. 12, Exhibit E.) (emphasis added):

8. An October 18, 2006 e-mail exchange reflects a disagreement between counsel regarding whether the dispute is to be arbitrated via AAA procedures or through "some alternative forum." (Doc. 17, Exhibit 1)

9. On October 31, 2006, the AAA sent a letter to counsel for the Lewises confirming that the Lewises' claims would *not* proceed before the AAA:

As of this date, we have not received the required submissions and fees from the business in this matter. Accordingly, we must decline to administer this case. Any payment submitted by a party will be sent to that party via U.S. Mail.

(Doc. 17, Exhibit B)

10. A November 15, 2006 e-mail exchange between counsel for the parties and Charles Fleming, Esq., confirms the parties' agreement to appoint Fleming to arbitrate the Lewises' claims against Redman. (Doc. 12, Exhibit F)

11. On or about December 18, 2006 the Lewises submitted a demand for class arbitration. (Doc. 1, ¶ 18 and Exhibit B) The Class Arbitration Demand states, in part, that the Lewises wish to consolidate their individual arbitration claims with those of "all others similarly situated in Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Texas who have purchased mobile homes from Respondents Redman Homes, Inc .... on or after September 9, 2002" and demand that the class arbitration be held in Wilcox County, Alabama. (Doc. 1, Exhibit B at ¶ 1)

12. Thereafter, on December 28, 2006 Charles Fleming, Esq., issued a request to counsel for Redman to provide him with a response to the class arbitration demand. (Doc. 12, Exhibit H) [5]

5. The letter references *Dixon v. Patriot Homes of Alabama, Inc., et al* and *Kelley v. Gateway*

*Homes* and states in part: "[a]s you know, the

13. On February 13, 2007 Redman Homes filed the instant complaint seeking an order from the court "compel[ling] Defendants to arbitrate their dispute as expressly provided in the Arbitration Agreement in an individual arbitration in the jurisdiction where their manufactured home was sold . . . ." (Doc. 1 at 15).

14. On February 14, 2007 counsel for Redman wrote Charles Fleming. Esq. advising that they were withdrawing any "alleged consent . . . to arbitrate any purported class claims whatsoever in any forum." (Doc. 17, Exhibit C)

## III. STANDARD ON MOTION TO DISMISS

Defendants move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1). In opposition, plaintiff first argues that the motion is procedurally defective. Specifically, plaintiff contends that the Lewises are asking the Court to rule as a matter of law on legal issues presented in Redman's Complaint, and in doing so, ask the Court to consider letters and other miscellaneous matters attached as exhibits to the Lewises' motion. Redman argues that if the Court is to consider this extraneous evidence, the Lewises' motion really becomes one in the nature of a summary judgment which should be heard after discovery is complete.[6] In reply defendants maintain that when ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidence outside the pleadings.

The documents submitted by the Lewises' in support of their motion to dismiss consist of, for the most part, correspondence between counsel regarding the terms and conditions of the arbitration. While a motion brought pursuant to Fed. R.Civ.P. 12(b)(6) must be converted to a motion for summary judgment if the court considers matters outside the pleadings, those constraints are not necessarily present when the court is faced with a motion brought pursuant to Fed.R.Civ.P. 12(b)(1).

■ "Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms, 'facial' and 'factual' attacks". *Morrison v. Amway Corp.*, 323 F.3d 920, 925, n. 5 (11th Cir.2003) citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion. *Id.* Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings. *Id.* In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits. *Id.*

The Eleventh Circuit Court of Appeals has held that "[w]hen ruling on a 12(b)(1)

---

plaintiffs have filed a class arbitration demand in these cases, very similar to the ones filed in the *James v. River Birch Homes* and *Lewis v. Redman Homes* cases . . . At this point, I am basically interested in the defendants' contentions, if any, that the class arbitration demand, in and of itself, is improper for these plaintiffs against these defendants in these arbitrations."

**6.** The parties Rule 16(f) report of parties is due May 25, 2007. The proper procedure for raising an issue that a motion for summary judgment is premature because discovery is not closed is found in Fed.R.Civ.P. 56(f), which provides:

> Should it appear from the *affidavits* of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). Counsel for Redman has not submitted a 56(f) affidavit in support of this contention.

motion, [ ] the court is not prevented from inquiring into undisputed facts. A challenge to the court's subject matter jurisdiction can properly be resolved on undisputed facts, even if such a challenge involves a direct attack on the merits of plaintiff's claim". *SEC v. Mutual Benefits Corp.*, 408 F.3d 737, 742 (11th Cir.2005)(internal citations omitted)

In *Morrison v. Amway Corp.*, the Eleventh Circuit Court of Appeals opined, in part:

> ... [W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional issue. *We have cautioned, however, that the district court should only rely on Rule 12(b)(1) "[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.". If a jurisdictional challenge does implicate the merits of the underlying claim then: [T]he proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.... Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.* This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions pro-

vides, moreover, a greater level of protection for the plaintiff who in truth is facing a challenge to the validity of his claim: the defendant is forced to proceed under Rule 12(b)(6) ... or Rule .56 ... both of which place great restrictions on the district court's discretion....

323 F.3d at 925. (internal citations omitted)(emphasis added)

In *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327 (11th Cir.2001), the Court opined:

> A federal court must always dismiss a case upon determining that it lacks subject matter jurisdiction, regardless of the stage of the proceedings, and facts outside of the pleadings may be considered as part of that determination. *See, e.g., Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir.2001) ("[B]ecause a federal court is powerless to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises.").

259 F.3d at 1332, n. 6.

 Fact-based attacks on the court's subject matter jurisdiction are addressed under Rule 12(b)(1), and the court may consider matters outside the pleadings without converting the motion into a summary judgment motion. *Id.* at 1331. The Court finds that the motion has been properly brought pursuant to Rule 12(b)(1) and the Court will analyze it under that framework.

## IV. DISCUSSION

Defendants move to dismiss the complaint on the grounds, in sum, that this court lacks jurisdiction over this matter. (Doc. 12) Redman's complaint to compel

arbitration invokes jurisdiction pursuant to the FAA and 28 U.S.C. § 1332. (Doc. 1) In their motion to dismiss defendants argue that the FAA does not provide an independent basis for federal subject matter jurisdiction and that Redman has not properly pled the requisite amount in controversy such that the Court would have diversity jurisdiction. (Doc. 12 at 5)

*Federal Arbitration Act*[7]

██ Pursuant to Title 9 U.S.C. § 4[8] of the FAA, an order compelling arbitration is permissible only where the federal district court would have jurisdiction over a suit on the underlying dispute. *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir.2003) (The Arbitration Act "does not provide an independent basis for a federal court's subject-matter jurisdiction.") Thus, jurisdiction may not be premised solely on Section 4. Therefore, in order to invoke the court's jurisdiction, there must be diversity of citizenship or some other independent basis for federal jurisdiction. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir.1997) *cert. denied* 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); *Household Bank v. JFS Group*, 320 F.3d at 1253.

*Diversity Jurisdiction*

Redman maintains that the Court has diversity jurisdiction over its complaint on the grounds that there is complete diversity between the parties and the amount in controversy is over $75,000 based on the Lewises' individual arbitration demand.[9] Specifically, Redman notes that the Lewises' original demand to arbitrate their individual claims against Redman on its face expressly seeks $75,000, plus legal fees, costs and expenses, and incidental, consequential, lost value and mental anguish damages. (*See* Doc. 12, Exhibit A). Based on this, Redman argues the Court may properly exercise diversity jurisdiction over this matter.

While the Lewises concede that "it appears that the parties are of diverse citizenship," they argue that their arbitration demand claims are not the correct measure of the "amount in controversy." (Doc. 12 at 5) Specifically, the Lewises argue that when a party seeks to compel arbitration or enjoin an ongoing arbitration the amount in controversy is measured by the value of what is sought in the Complaint seeking to compel arbitration, not the claims in the underlying dispute. (*Id.*)

---

**7.** Pursuant to the Federal Arbitration Act, a written arbitration "provision in any ... contract evidencing a transaction involving commerce ... [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA allows a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement" to petition the court "for an order directing that such arbitration proceed." 9 U.S.C. § 4. When a court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court is required to "make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

**8.** Section 4 provides a remedy to "a party aggrieved by the alleged failure, neglect, or

refusal of another to arbitrate." There is nothing in the record to reflect, nor does Redman suggest that the Lewises declined or refused to participate in arbitration. Moreover, prior to the Lewises filing of the class demand, the arbitration procedure had commenced.

**9.** Citing to *Clearwater Ins. Co. v. Granite State Ins. Co.*, 2006 WL 2827872 (N.D.Cal., October 2, 2006) (slip opinion), Redman argues, as an aside, that the court has jurisdiction over this action under 9 U.S.C. § 5. Neither the cited case or the statute provide support for Redman's proposition. 9 U.S.C. § 5 merely provides for resolving a dispute over the appointment of an arbiter in a case which could be brought under the FAA and does not provide a basis for independent federal jurisdiction.

Specifically, defendants argue that the proper value is determined by comparing "the cost of litigating whether class arbitration is appropriate before the arbitrator versus the cost of litigating whether class arbitration is appropriate before this Court." (*Id.* at 6) Defendants maintain that the value is "indeterminate" and "speculative" and therefore does not satisfy the amount in controversy requirement. (*Id.*)

In response, Redman argues that the Lewises' proposed measure of the amount in controversy runs contrary both to the letter of the FAA and U.S. Supreme Court authority interpreting the FAA. (Doc. 22 at 9) Redman warns that should this Court adopt the Lewises' measure of the amount in controversy, FAA § 4 would be effectively read out of existence as no aggrieved party seeking to compel arbitration would ever be able to establish the requisite amount in controversy separate and apart from that in the underlying dispute. (*Id.*)

The Court need not resolve the issue of diversity jurisdiction since, as explained below, the Court lacks jurisdiction to consider the issue.

*Case or Controversy Requirement*

■ Article III, section two of the United States Constitution limits this Court's jurisdiction to "cases" and "controversies." *Provident Life & Acc. Ins. Co. v. Transamerica–Occidental Life Ins. Co.,* 850 F.2d 1489, 1491 (11th Cir.1988) *cert. denied* 489 U.S. 1081, 109 S.Ct. 1534, 103 L.Ed.2d 839 (1989)("The controversy must be definite and concrete, touching the legal relations of the parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a degree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") "[I]f a party makes a motion to compel arbitration un-

der 9 U.S.C. § 4, a district court must determine if there exists a case or controversy in order for it to exercise its jurisdiction over that motion to compel. While the absence of a case or controversy requires a court to abstain from mandating arbitration, this does not give it the right to enjoin arbitration." *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1110, n. 19 (11th Cir.2004)

■ Defendants argue that the Court lacks jurisdiction on the grounds that there exists no case or controversy. Specifically, defendants argue that whether class arbitration is allowable is a matter for resolution by the arbitrator, not this Court, and because the arbitrator has not yet issued his decision on the propriety of class arbitration, there is no present case or controversy for this Court to review. Defendants note that the arbitration agreement at issue does not expressly prohibit class actions and "incorporates the Rules of the American Arbitration Association, which specifically provide procedures for class arbitration and determining whether class arbitration is appropriate." (Doc. 12 at 7)

Redman contends that the "FAA § 4 is specifically drafted to bring the very type of dispute currently at issue between these parties to this Court." Redman relies, in part, on *Sterling Fin. Inv. Group, Inc. v. Hammer,* 393 F.3d 1223 (11th Cir.2004). The issue before the Eleventh Circuit in *Sterling* was whether the district court properly enjoined arbitration in Houston, Texas and compelled arbitration in Boca Raton, Florida. *Id.* The Court held that pursuant to FAA Section 4, the district court had jurisdiction to enforce a forum selection clause in a valid arbitration agreement when that clause had been disregarded by the arbitrators. *Id.* at 1225.

In reply defendant notes that *Sterling* is distinguishable since it involved a demand

for arbitration in a venue different from that specified in the arbitration agreement. The Court concurs that *Sterling* is not dispositive of the issue at hand.[10]

Although Redman concedes that it had previously consented for Charles Fleming to act as arbitrator it maintains that consent was limited and was "solely for resolution of the Lewises' individual claims" and that Fleming did not have the authority to act as arbitrator in any other capacity.[11] Redman further argues that it is not "participating in arbitration" as defendants represent to the Court. Finally, Redman argues that there are several "gateway issues" that present a case in controversy, including the following: a) Is there a binding arbitration agreement between the parties? b) Was there a meeting of the minds between the parties as to the post dispute arbitration agreement to go outside the AAA? c) If there was a post-dispute arbitration agreement reached between the parties to go outside the AAA to arbitrate the Lewises' individual claims, was there any meeting of the minds as to whether that would alter or amend all other Redman Homes customer arbitration agreements?.

The issue at hand is not whether the parties have entered into a valid arbitration agreement—although Redman makes an attempt to cast it in this light. Although Redman maintains there is no "ongoing arbitration" and moves the Court to compel arbitration, the fact of the matter is that *neither* party is resisting arbitration. In fact, the arbitration process clearly commenced with the appointment and acceptance of Charles Fleming as the arbitrator. Rather, this arbitration went awry when counsel for the Lewises submitted a demand for class arbitration.[12] Redman now attempts to invoke this Court's jurisdiction to micro-manage the arbitration of the underlying dispute by deciding whether the agreement enables the plaintiffs to demand class arbitration. The Court is without jurisdiction to do so.

The Court's authority for this ruling is embedded in rulings from both the United States Supreme Court as well as the Eleventh Circuit Court of Appeals. In *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 452–53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003), the Supreme Court held that when an arbitration agreement does not clearly preclude class arbitration, the arbitrator, and not the court, must decide whether class arbitration is appropriate. *Id.* at 447, 123 S.Ct. 2402. Specifically, in *Green Tree*, the Court held that the question of whether the parties' agreement prohibited the use of class arbitration procedures was an issue for the arbitrator because "[i]t concerns contract interpreta-

---

**10.** Redman also argues that pursuant to the arbitration agreement, the arbitration must be held in Tuscaloosa County rather than Wilcox County, as demanded in the Lewises' class arbitration demand. In response, the Lewises argue that Redman has waived its venue defense since it failed to raise the issue of venue in response to the Lewises' arbitration demand. Notwithstanding, counsel for the Lewises represent that they "are willing to and stipulate that they will arbitrate this matter in either Tuscaloosa County or Mobile County, whichever Redman chooses. Provided, however, that Redman is bound by its prior agreement to arbitrate pursuant to the AAA Rules before Charles Fleming."

**11.** Defendants contend that Redman agreed to the AAA Rules and to use Mr. Fleming as an arbitrator. Plaintiffs counter that the agreement to use Fleming as an arbitrator was an agreement outside arbitration and note that Fleming is not an AAA approved arbitrator.

**12.** Redman argues that if this Court dismisses this action and permits Mr. Fleming to decide the rights of the class, then any class award (or settlement) that results will be completely unenforceable under the Full Faith and Credit clause of the U.S. Constitution because there are no procedural rules in place to guarantee the due process rights of the class.

tion and arbitration procedures," rather than "judicial procedures." *Id.* at 452–53, 123 S.Ct. 2402. The Court reaffirmed the general division of labor articulated in Howsam[13], noting that the issues which relate to "what kind of arbitration proceeding the parties agreed to" are presumptively for the arbitrator to decide, while issues related to "whether they agreed to arbitrate a matter," are presumptively entrusted to the court for resolution. *Id.* at 452, 123 S.Ct. 2402 (emphasis omitted). Along that same line, the Eleventh Circuit has held that when an arbitration agreement does not clearly preclude class arbitration, "the arbitrator, rather than the court, must resolve the issue as a matter of state law." *See Rollins, Inc. v. Garrett,* 176 Fed.Appx. 968, 2006 WL 1024166, *1 (11th Cir.2006) (unpublished).

Redman requests this Court to decide which type of arbitration proceeding that the parties are subject to, i.e. individual or class wide. The arbitration agreement itself is silent as to the issue of class action arbitration. The Supreme Court has spoken to this issue and pursuant to the holding in *Bazzle,* the Court finds that this issue is the kind of procedural matter than falls to the arbitrator. *Gipson v. Cross Country Bank,* 354 F.Supp.2d 1278, 1285 (M.D.Ala.2005) (construing *Bazzle* as meaning that, when arbitration provision does not expressly permit or prohibit class-wide arbitration, decision as to whether it forbids class arbitration is for arbitrator, not court); *Johnson v. Long John Silver's Restaurants, Inc.,* 320 F.Supp.2d 656, 668 (M.D.Tenn.2004), aff'd

414 F.3d 583 (6th Cir.2005) (post *Bazzle,* "this Court cannot determine whether a prohibition on class arbitration would effectively vindicate rights because this Court does not have the authority to decide whether the contract permits class arbitrations").

## IV. CONCLUSION

Based on the authority set forth in *Bazzle* and *Rollins* the Court finds that these issues are ones that should be addressed by the arbitrator and not the Court. Accordingly, defendants' motion to dismiss is **GRANTED.**

**DONE AND ORDERED.**

## ORDER

Before the court are plaintiff's motion to amend the judgment of May 29, 2007 dismissing the plaintiffs complaint for lack of subject matter jurisdiction (Doc. 28), defendants' response in opposition (Doc. 34), and plaintiff's reply brief (Doc. 38). Upon consideration the motion amend the judgment of May 29, 2007, is **GRANTED,** in part, and DENIED, in part, as set out herein.

The plaintiff argues that the undersigned's opinion is replete with clear errors of law and fact that result in manifest injustice. Specifically, the plaintiffs argue that the court erred 1) by making a finding of fact that Redman had agreed to modify its pre-dispute arbitration agreement to allow for a non-AAA arbitrator;[1] 2) by not allowing the plaintiffs to engage in discovery on the jurisdictional issue, and 3) by determining, pursuant to *Bazzle*[2], that the

---

13. *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002).

1. The plaintiffs assert that the "Court itself identified several existing controversies between the parties sufficient to satisfy the cases or controversies requirement of Article III" and that the court "not[ed] the existence of

these controversies". (Doc. 28, pp. 3–4). The cited section of the court's opinion summarizes the plaintiffs argument but makes no determination that these are "gateway issues" in dispute.

2. *Green Tree Financial Corp. v. Bazzle,* 539 U.S. 444, 452–53, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003)

court is without subject matter jurisdiction to determine whether the arbitration agreement permits class arbitration.

### Class Arbitration Issue

For reasons previously stated in the May 29, 2007 order (Doc. 27), the court finds that it is without jurisdiction to consider whether the arbitration agreement permits class arbitration. *See, Bazzle,* 539 U.S. at 452–53 ("[W]hether the contract forbids class arbitration does not fall into this narrow exception" because "it concerns neither the validity of the arbitration clause nor its applicability to the underlying dispute between the parties".) The determination of whether the parties agreed to a non-AAA arbitrator is not necessary to the court's determination that it is without jurisdiction to hear the claim that a demand for class action arbitration violates the. written arbitration agreement Moreover, this determination is solely a legal determination, thus no factual discovery is required. Whether the arbitration agreement in this case allows for class action arbitration is for the arbitrator to decide, not the court The plaintiff has not presented any argument which changes the court's opinion on this issue. Accordingly, the motion to alter the judgment as to this alleged error is DENIED.

### Other Claims

The plaintiff also moves the court to alter the judgment on the grounds that the court improperly determined issues of fact, i.e., that plaintiff had agreed to a non-AAA arbitrator and that the arbitration had commenced The plaintiff states that this action was initiated for the purpose of enforcing the written arbitration agreement, which mandates the use of a AAA arbitrator in the proper venue. Plaintiff then argues that whether they agreed to Charlie Fleming as the arbitrator and thus modified the written agreement, is a "gateway issue" that provides this court with subject matter jurisdiction.

A review of the allegations indicates that the plaintiffs complaint is premised on the issues of proper venue and whether class action arbitration is appropriate. Specifically, the complaint states:

"Because defendants' demand for a class action arbitration to be held in Wilcox County", Alabama demonstrates an intentional refusal to arbitrate in accordance with the terms of their Arbitration Agreement, Redman Homes is entitled under the Federal Arbitration Act to seek "an order directing that . . . arbitration proceed in the manner provided for in [Defendants'] agreement."

(Doc. 1, p. 9) The request for relief states:

"Redman Homes respectfully requests that this Honorable Court compel Defendants to arbitrate their individual claims against Redman Homes in accordance with the express terms of their agreement in the venue agreed to among the parties, i.e., the jurisdiction of the original retail sale of the manufactured home (and after complying with the express alternative dispute resolution procedures of the arbitration agreement after negotiation and mediation) . . . and not to consolidate the claim of unnamed parties into one purported class arbitration in Wilcox County, Alabama. . . ." Redman Homes respectfully requests that this Court order that Defendants [1] Class Action Arbitration Demand is contrary to Alabama law, is in direct contradiction of Defendants* Arbitration Agreement and impermissible . . . [and] "compel Defendants to arbitrate their dispute as expressly provided in the Arbitration Agreement in an individual arbitration in a jurisdiction where their manufactured home was sold (i.e. Tuscaloosa County, Alabama) and not on behalf of a purported class (and only after exhausting the other conditions

and procedures set forth in the Arbitration Agreement)." (Doc. 1, p 13, 15)

■ As previously stated, the court is without jurisdiction to decide whether the arbitration agreement allows for class action arbitration. As to the claim of improper venue, the plaintiff has stated a claim which presents a cognizable controversy.[3] *See Sterling v. Hammer* 393 F.3d 1223, 1225 (11th Cir.2004)("[The] federal district court, pursuant to 9 U.S.C. § 4, has jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators.")[4] Thus, the court reconsiders its prior decision to dismiss the complaint in its entirety, and alters its judgment accordingly.

■ The court next considers whether the issue of the selection of the arbitrator is a "gateway issue*'" over which the court has subject matter jurisdiction. The selection of the arbitrator, pursuant to a valid arbitration agreement, is a "gateway matter" over which the court has jurisdiction pursuant to Congress' direction that the district courts order that arbitration proceed "in accordance with the terms of the agreement". 9 U.S.C. § 4. It concerns fundamentally who will decide the parties' dispute, not merely "what kind of arbitration proceeding the parties agreed to." *Bazzle* 539 U.S. at 452. Moreover, the decision of how the arbitrator should be selected is not a circumstance "where parties would likely expect that an arbitrator would decide the gateway matter". *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 592, 154 L.Ed.2d 491 (2002). To hold otherwise would place arbitrators in the precarious position of deciding whether they have authority to decide. *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos* 25 F.3d 223 226 (4th Cir.1994) ("[I]f the arbitrators here could somehow have interpreted the contract to determine how they should be selected (which appears impossible because the determination of how they should be selected obviously had to precede their selection"), their interpretation would not be entitled to deference because it would have involved a determination of their; own jurisdiction. *See AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 651, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986) (stating that an arbitrator should not be given "the power to determine his own jurisdiction") (quotations omitted); *"International Ass'n of Machinists v. General Elec. Co.*, 865 F.2d 902, 904 (7th Cir.1989) (Posner, J.) ("The arbitrator is not the judge of his own authority. . . .")) *See also, Avis Rent A Car Sys., Inc. v. Garage Employees Union*, 791 F.2d 22, 25 (2nd Cir.1986)

3. The reconsideration of this issue is *sua sponte*, based on the court's determination that it erred in not recognizing this claim in its previous decision.

4. In the defendants opposition to the plaintiff's motion to amend (Doc. 39) they argue, inter alia, that *Sterling* requires that an arbitrator must have actually disregarded the forum selection clause before the court has jurisdiction to enforce a forum selection clause. The undersigned disagrees with defendants' narrow reading of *Sterling*. In *Sterling* the court cited the case of *Bear, Stearns & Co. v. Bennett*, 938 F.2d 31 (2nd Cir.1991) in support of its holding. In *Ben-*

*nett* the court stated as follows; "[w]e reject [defendant's] argument that the 'situs of suit' should be determined by the arbitrators or the AAA rather than by the district court. Where there is a valid agreement for arbitration, Congress has directed the district courts to order that arbitration proceed 'in accordance with the terms of the agreement.' 9 U.S.C. § 4." In *Bennett*, as in this case, no arbiter had made a decision on the location of the arbitration. Rather, only a demand had been made by defendant which sought arbitration in a site different *from* the one plaintiff" claimed had been agreed to in the arbitration agreement.

("Courts generally enforce [arbitration clauses] strictly, vacating awards entered by arbitrators whose qualifications or method of appointment tail to conform to arbitration clauses."). Thus, the court has subject matter jurisdiction over a claim regarding the proper selection of the arbiter.

The court notes that at no point in the complaint does the plaintiff specifically make any allegation in reference to the use of a non-AAA arbitrator as violative of the arbitration agreement. However, the plaintiff makes a general claim that "[b]y this petition, Redman Homes seeks to compel defendants to arbitrate in accordance with the specific terms of the arbitration agreement at issue". (Doc. 1, p. 1) Because the court has determined that subject matter jurisdiction exists, at least as to the proper venue claim, and because there is a pending motion to amend (which is addressed *infra)*, the court need not decide at this point whether this allegation is sufficient to satisfy the requirements of notice pleading. Before the court turns to the motion for leave to amend, there is yet another issue concerning the court's subject matter jurisdiction.

### Diversity Jurisdiction

■ In the previous opinion the court did not decide whether diversity jurisdiction exists because of the determination that the court lacked jurisdiction to consider the claim relating to class action arbitration. The court now considers whether diversity jurisdiction exists over the remaining claims.

■ In order to invoke the court's jurisdiction, there must be diversity of citizenship or seine: Other independent basis for federal jurisdiction. *Baltin v. Alaron Trading Corp.*, 128 F.3d 1466, 1469 (11th Cir.1997) *cert. denied* 525 U.S. 841, 119 S.Ct. 105, 142 L.Ed.2d 84 (1998); *Household Bank v. JFS Group*, 320 F.3d 1249, 1253 (11th Cir.2003). Redman maintains that the Court has diversity jurisdiction over its complaint on the grounds that there is complete diversity between the parties and the amount in controversy is over $75,000 based on the defendants' individual arbitration demand. Specifically, Redman notes that the defendants' original demand to arbitrate their individual claims against Redman on its face expressly seeks $75,000, plus legal fees, costs and expenses, and incidental, consequential, lost value and mental anguish damages. (*See* Doc. 12, Exhibit A). Based on this, Redman argues the Court may properly exercise diversity jurisdiction over this matter.

While the defendants concede that "it appears that the parties are of diverse citizenship," they argue that their arbitration demand claims are not the correct measure of the "amount in controversy." (Doc. 12 at 5) Specifically, the defendants argue that when a party seeks to compel arbitration or enjoin an ongoing arbitration, the amount in controversy is measured by the value of what is sought in the Complaint seeking to compel arbitration, not the claims in the underlying dispute. The defendants argue that the proper value is determined by comparing "the cost of litigating whether class arbitration is appropriate before the arbitrator versus the cost of litigating whether class arbitration is appropriate before this Court." (*Id.* at 6) Defendants maintain that the value is "indeterminate" and "speculative" and therefore does not satisfy the amount in controversy requirement.

In response, Redman argues that the defendants' proposed measure of the amount in controversy runs contrary both to the letter of the FAA and U.S. Supreme Court authority interpreting the FAA. Redman warns that should this Court adopt the defendants' measure of the amount in controversy, FAA § 4 would be

effectively read out of existence as no aggrieved party seeking to compel arbitration would ever be able to establish the requisite amount in controversy separate and apart from that in the underlying dispute.

The court agrees with the plaintiff and adopts the cited authority as set forth in plaintiff's response. (*See* Doc. 17, pp. 9–12.) Accordingly, the court finds that subject matter exists over the remaining claims because the court would have diversity jurisdiction over the underlying dispute.

## Motion to Amend

Plaintiff has filed a motion for leave to amend the complaint(Doc. 31), and defendants have filed a response in opposition (Doc. 33), to which plaintiff has replied (Doc. 39). Upon consideration the motion to amend the complaint is **GRANTED**.

██ The decision whether to grant leave to amend a complaint is within the sole discretion of the district court. *Laurie v. Alabama Ct. of Crim.App.*, 256 F.3d 1266, 1274 (11th Cir.2001). However, Rule 15(a) tempers the court's discretion by directing that "leave shall be freely given when justice so requires." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir.2001). The Supreme Court has held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief, he [or she] ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Thus, the court must have a substantial reason to deny a motion to amend. *Laurie*, 256 F.3d at 1274. Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment" *Foman*, 371 U.S. at 182, 83 S.Ct. 227, 9 L.Ed.2d 222; *see also Hargett v. Valley Fed. Savings Bank*, 60 F.3d 754, 761 (11th Cir. 1995).

██ Defendants assert that, even were the court to permit the plaintiff to file the proposed amended complaint attached to their motion, that amendment would be futile because it fails to state a claim over which this court has subject matter jurisdiction. " 'A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.' " *Galindo v. ARI Mut. Ins. Co.*, 203 F.3d 771, 777, n. 10 (11th Cir.2000) (quoting *Jefferson County School Dist. No. R–1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999)).

As explained *supra*, the court has subject matter jurisdiction over the "gateway issue" of interpreting the agreement as to the proper selection of the arbitrator. Plaintiff's amended complaint presents this claim, i.e., "Redman respectfully requests this Court to determine that Charles Fleming does not have jurisdiction to arbitrate this matter and to enjoin Mr. Fleming from arbitrating further". Thus the amendment, at least in part, is not futile.[5]

---

5. The court notes that other matters of contract interpretation would likely be for the arbitrator and not the court to decide. See, *Bazzle*, 539 U.S. at 453 ("It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide."); *Howsam*, 537 U.S. at 84 ("[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide.")

*Conclusion*

Wherefore, the court's previous judgment of May 29, 2007 (Doc. 27) is amended as follows: The motion to dismiss is **GRANTED** *only as to the claims related to whether the arbitration agreement allows for class arbitration.* Moreover, plaintiff's motion for leave to amend the complaint (Doc. 31) is **GRANTED**.

**DONE and ORDERED.**