This is an original petition for the writ of mandamus, or in the alternative the writ of prohibition, by Associates Commercial Corporation to cause Honorable Terry L. Butts, Judge of the Circuit Court of Pike County, to:
(1) Void, vacate or annul a temporary restraining order issued 28 April 1982;
(2) To void, vacate or annul a preliminary injunction issued 7 May 1982; and to
(3) Direct that such orders be entered or issued to cause certain certificates of title to certain truck trailers to be restored to Associates Commercial Corporation that were delivered to Wiley Sanders, Jr., in compliance with the order of the trial court of 28 April 1982 (alleged by Associates to be void).
We issue the writ of mandamus conditionally.
The course of proceedings in the trial court presents a very bizarre set of facts. Those facts are well stated in Associate's petition. The portions of that petition pertinent at this point read:
 "1. On or about November 21, 1978 Associates Commercial Corporation (hereafter `Associates') was assigned a security agreement by Tidwell Trailer 
Equipment Company, Inc. (hereafter `Tidwell') wherein Tidwell was secured party and Wiley C. Sanders, Jr. (hereafter `Sanders') was debtor. A copy of this agreement is attached as Exhibit `A' to Part V of this petition. The contract provides that 36 trailers secure the payment of a purchase price of $592,444.13 in accord with the terms of a promissory note executed by Sanders and attached as Exhibit `B'. Under the terms of the assignment Associates has a right of recourse against Tidwell. $153,912.66 was due on this contract as of April 28, 1982.
 "2. On May 24, 1979 Associates loaned Sanders $467,812.80 to purchase 32 trailers. To secure this obligation Associates was given a purchase money security interest in the trailers. A copy of the *Page 197 
security agreement evidencing the debt and granting the security interest is attached as Exhibit `C'. $206,572.33 was due on this obligation of April 28, 1982.
 "3. On or about January 12, 1982 Sanders advised Associates that he wished to pay off the debt evidenced by the May 24, 1979 contract; substitute the collateral securing the May 24, 1979 contract for the collateral securing the November 21, 1978 contract; and secure a release of the collateral securing the November 21, 1978 contract so that he could sell those trailers. Associates refused to release any collateral securing an obligation so long as the obligation was outstanding on which Associates refused to substitute collateral from one debt to the other.
 "4. Sometime during the latter part of April, 1982, Sanders, with full knowledge that Associates would not agree to their release, entered into an agreement to sell 20 of the trailers securing the November 11, 1978 contract to Dorsey Trailers, Elba, Alabama. As a part of this sales transaction the trailers were delivered to the possession of Dorsey Trailers on or about April 22, 1982.
 "5. On April 27, 1982 Sanders' bookkeeper called Associates and requested information as to the amount then due on both contracts. In this conversation no mention was made of the fact that the vehicles secured by the November 21, 1978 have been sold or that an application would be made to the Circuit Court for the 12th Judicial Circuit for a temporary restraining order requiring Associates to deliver over the titles to these trailers.
 "6. On April 27, 1982 Sanders and Sanders Lead Company, Inc. executed a bond payable to Associates in the amount of $300,000.00 conditioned on Sanders paying damages and cost that any person may sustain by the suing out of an injunction if that injunction was dissolved.
 "7. On April 27, 1982 Sanders executed a sworn petition for declaratory judgment which asked for a temporary restraining order that would prohibit Associates from refusing to surrender `physical position, free from all encumbrances, of the security now being used to secure the security agreement 273 (contract of November 21, 1978) upon the tender by the plaintiff (Sanders) to the defendant (Associates) of the security now being used to secure security agreement 367 (contract of May 24, 1979)." A copy of the petition is attached as Exhibit `D'.
 "8. In the April 28, 1982 Petition for Declaratory Judgment Sanders alleged, among other things; that the two security agreements referred to above did not prohibit substitution of collateral; that Associates was wrongfully refusing to accept a substitution of collateral; and that unless there could be a substitution of the collateral Sanders would `suffer immediate and irreparable injury, loss and damage before notice can be served and a hearing had thereon.' The Complaint asked for a judgment declaring that Sanders had the right to cause a substitution of collateral. The prayer for relief contained the request that:
 `. . . this court will issue a temporary restraining order prohibiting the defendant from refusing to surrender physical possession, free from all encumbrances, of the security now being used to secure the security agreement No. 273 upon the tender by the plaintiff to the defendant of the security now being used to secure security agreement No. 367.'
The ultimate relief prayed for by Sanders was:
 `. . . the court will render a declaratory judgment declaring that the plaintiff has the permanent right to cause a substitution of collateral, provided said substitution does not adversely affect the defendant's security position with respect to the security agreement No. 273.'"
On 28 April 1982, the trial judge, without notice to Associates and without holding a hearing, issued a temporary restraining order enjoining Associates from: *Page 198 
 ". . . refusing to accept the released security from contract No. 367 dated May 24, 1979 consisting of thirty-two (32) 1979 Utility flat trailers, serial numbers 7L9-2571-001 through 032 as the security for the indebtedness incurred under security agreement No. 273 dated November 21, 1978, thereby releasing and surrendering title to the security used to secure said contract No. 273. The defendant is further restrained from refusing to surrender to the plaintiff the unencumbered certificates of title to the security used to secure security agreement No. 273 more particularly described as follows: twenty (20) 1978 Utility 44 foot van trailers serial number 7U8199-001 through 005 and serial number 7U8-2000-001 through 005 and ten (10) 1978 Utility 40 foot van trailers, serial numbers 7U8-2137-001 through 010. This order shall be effective only upon plaintiff, in certified funds, paying off the outstanding indebtedness under the contract No. 367, thereby effectuating a release of the security under that contract so that that said security becomes available for the security under contract No. 273.'"
On the same date, the attorney for Sanders and a deputy sheriff of Pike County served Associates with the temporary restraining order and delivered certified funds in a sufficient amount to discharge the monetary obligations due under the contract dated May 24, 1979. The attorney for Sanders demanded endorsed certificates of title on those trailers subject to Associates' security interest as described in the contract dated November 21, 1978. Associates complied with the mandate contained in the temporary restraining order.
The next day, Sanders formalized its sale to Dorsey Trailers by delivering 20 of the certificates of title obtained from Associates to Dorsey Trailers and receiving payment of $137,000.00. Sanders has apparently retained the possession and the endorsed certificates of title on ten of the trailers.
On 5 May 1982, Associates moved the Pike County Circuit Court to dissolve the temporary restraining order.
On 7 May 1982, a hearing was held before Judge Butts. Petitioner alleges that
 "It does not appear from specific facts shown by affidavit or by verified complaint (a) that immediate and irreparable injury, loss or damage would result to Sanders before Associates can be heard in opposition; nor (b) any certification as to the efforts made to give notice and the reason supporting the claim that notice should not be required."
and further alleges that the purpose of the hearing 7 May was
 ". . . to consider Associates' motion to dissolve the temporary restraining order and Sanders' motion for a preliminary injunction. No evidence was offered the court as to the immediate and irreparable injury suffered by Sanders if he did not receive, by way of preliminary injunction, the relief requested in his complaint nor was there any evidence to substantiate the general allegations that Associates was under an obligation to substitute collateral for its various security interests on demand of Sanders. There was no evidence to support the allegation that the Circuit Court of Pike County had the authority to order Associates to make a substitution of such collateral. . . ."
After the hearing the trial judge entered an order that, among other things, (1) dissolved the temporary restraining order; (2) granted the preliminary injunction; (3) stayed "all matters in the above styled case" pending further orders of the court; (4) continued the motion for preliminary injunction until 21 June 1982.
Petitioner also alleges that:
 "The order of May 7, 1982 did not set forth the reasons for its issuance; was not specific in its terms; and did not describe in reasonable detail the act or acts sought to be restrained. . . .",
and further that:
 "The preliminary injunction issued by the Court's order of May 7, 1982 was not conditioned upon Sanders giving bond or other security to protect Associates from damages arising out of the granting of the preliminary injunction." *Page 199 
The answer of Honorable Terry L. Butts to the petition states:
 "1. The Court feels that the Petitioner seeking the temporary restraining order sufficiently established a need for same on the day same was issued, April 28, 1982.
 "2. The Court feels that at hearing on May 7, 1982 the Petitioner seeking the preliminary injunction sufficiently established the necessity for same.
 "3. The Petitioner for Mandamus and/or Prohibition Associates Commercial Corporation is in no way injured by the action taken by the Court in the above mentioned orders. In point of fact the court feels said Petitioner is adequately secured and the writ should be denied."
The answer of Wiley Sanders, Jr., states:
 "1. That on November 21, 1978, the plaintiff became indebted to the defendant in the amount of $592,444.13, said indebtedness secured by 36 1978 utility trailers. That on or about December 4, 1980, six of said trailers were released by the defendant without controversy and that as of April 28, 1982, those 30 1978 utility trailers were securing an indebtedness of $153,912.66.
 "2. On May 24, 1979, the plaintiff became further indebted to the defendant in the amount of $467,812.80, said indebtedness being secured by 32 1979 utility trailers. And that during said negotiations of the May 24, 1979, indebtedness the plaintiff was assured by the defendant that as the trailers being used as security under the 1978 indebtedness became depreciated and less valuable the plaintiff would be permitted to substitute collateral thereunder so that said security may be disposed of by the plaintiff before said security would become valueless. The plaintiff was further advised by the defendant that said contracts would not prevent a substitution of collateral and, in fact, they do not. The substitution of collateral would be permitted only if the defendant would be as secure at the time of said substitution as it would have been prior thereto.
 "3. In December 1981 the decision was made by the plaintiff that the 30 remaining trailers under the November 21, 1978 security agreement had depreciated to the point that it became necessary to dispose of the same, and plaintiff immediately thereafter requested of the defendant the necessary paperwork to effectuate said substitution, assuring the defendant that 32 newer model and more valuable trailers would be used as the substituting collateral to secure an indebtedness of approximately one-fifth of that which was being secured by 30 older model, less valuable trailers. Said request was in letter form and is attached hereto as `A'. The defendant refused to comply with its agreement, and said refusal was in the form of a letter from the defendant's attorney to the plaintiff's attorney. A copy of said letter is marked as Exhibit `B' thereto.
 "4. After many attempts to sell the 30 remaining trailers under the 1978 contract had failed, the plaintiff became concerned with the deteriorated condition of said trailers and in April 1982 the plaintiff found a purchaser for 20 of said trailers, conditioned upon the release of the titles being held by the defendant by May 1, 1982. In an attempt to protect the plaintiff's interest, it again sought to have the trailers released, assuring the defendant that the substitution of collateral would place the defendant in a more secure position than they would be without said substitution. Again the defendant refused.
 "5. That on the 27th day of April, 1972, the plaintiff executed a Petition for Declaratory Judgment which asked for a temporary restraining order conditioned upon the plaintiff executing a bond payable to the defendant in the amount of $300,000, with good and sufficient sureties (attached hereto and marked as Exhibit `C') prohibiting the defendant from surrendering 30 1978 trailers and accepting the 32 1979 trailers as substituted collateral. The irreparable injury resulting to the plaintiff in its failure to surrender *Page 200 
said titles by the 1st day of May, 1982, would have caused the plaintiff to lose a purchaser for the 1978 trailers which had deteriorated and depreciated to the point to where they were becoming less valuable than the amount owed thereupon. The net result of the Circuit Court's relief granted the plaintiff was to leave the defendant as a creditor of the plaintiff in the amount of $153,912.66 secured by 32 1979 utility trailers and a $300,000 bond of good and sufficient sureties.
 "6. The Circuit Court, at its May 7 hearing, set this cause upon its merits on June 21, 1982, in determining whether the plaintiff, under the contracts in question and the representations made by the defendant to the plaintiff, had a right of substitution of collateral. At said hearing the defendant filed a Motion for Continuance over the plaintiff's objections, said motion being granted by the Circuit Court."
There was absolutely no justification for the grant of injunctive relief to Sanders in this case. The pivotal rule that lies at the core of this case is that which says no court can rewrite the terms of a plain and unambiguous contract. See, e.g., Hardin v. John Hancock Mutual Life Ins. Co.,387 So.2d 123 (Ala. 1980).
We agree with Associates that the trial court was without jurisdiction to issue a temporary restraining order. The complaint was not verified and neither did it, or any affidavit, contain specific facts showing that immediate and irreparable injury, loss, or damage would result to the applicant before the adverse party or its attorney could be heard in opposition. Additionally, there was no application in writing by the applicant's attorney to the court regarding the efforts, if any, that had been made to give the notice and reasons supporting the claim that notice should not be required. It is therefore apparent that jurisdiction of the trial court was not invoked under the provisions of Rule 65 (b), ARCP.
At the expense of repetition, we will again state the 7 May order:
"ORDER
 "The above styled case came before the Court for hearing on temporary restraining order and motion to dissolve said temporary order. After hearing same was submitted to Court for ruling. Without comment on the evidence,
 "IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court as follows:
 "1. That motion of defendant to dissolve temporary restraining order is GRANTED.
 "2. That motion of plaintiff for preliminary injunction is GRANTED pending further orders of the Court as set out herein.
 "3. All matters in the above styled case are STAYED
as said matters presently exist as of the date of this order pending further orders of the Court other than as set out hereinabove.
 "4. The Court desires further hearing on matters before the Court including but not limited to motion for preliminary injunction, petition for declaratory judgment, and forthcoming answer to be filed by the defendant to the herein named motions, petitions and declaratory judgment.
 "5. Accordingly, all of the matters and things including but not limited to the motion for preliminary injunction, petition for declaratory judgment and forthcoming to same and any other matters that may arise and/or exist in the above styled case are consolidated and set for hearing on their respective merits. . . ."
Thus it appears the TRO this order purportedly dissolves effectively makes permanent the terms of that TRO subject only to further hearings to take place at a time too late to afford Associates any relief if a preliminary injunction was denied. In overall effect, the TRO became a permanent injunction. The 7 May order did not state reasons why it issued or was entered; was not specific in its terms, and did not *Page 201 
describe in reasonable detail what act or acts it sought to restrain (when "all matters in the above styled case are STAYED as said matters presently exist. . . ."). That order was therefore legally ineffective, International Brotherhood ofElectrical Workers v. Morton, 365 So.2d 662 (Ala. 1978).
Absent an agreement contained in the security instrument the debtor cannot require the substitution or release of collateral. By the terms of the security agreements between the parties in this case, only payment of the debts would require release of the collateral.
Associates correctly calls attention to the statutory provisions applicable to, and affecting the result in, this case. To quote Associates:
 "There is only one way that the holder of a security interest properly perfected by notation on the certificate of title can be required to surrender that certificate and thereby remove the restraints on its debtor. That way is following demand after satisfaction of the obligations.
 Section 32-8-64 (a) Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, he shall, within ten days after demand execute a release of his security interest, in the space provided therefor on the certificate or as the department shall prescribe, and mail or deliver the certificates or release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate.
 Since there has been no satisfaction of the obligation secured there can be no forced release of the certificates of title."
Section 7-9-201 provides: "[A] security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors", and as the Court of Civil Appeals has pointed out in Get It Kwik of America, Inc.v. First Alabama Bank of Huntsville, 361 So.2d 568, 572
(Ala.Civ.App. 1978):
"The terms of the security agreement are effective as between the parties to the agreement. The security agreement is, however, effective against purchasers of the collateral in the context of protecting the secured party's interest by allowing repossession of the collateral or allowing an action for conversion."
We have researched diligently and we have found no case authority to support the proposition that a debtor can require the substitution of or release of collateral in the absence of enabling contract provisions; however, there are a few cases where the secured party has attempted to substitute collateral. See, e.g., In re Dykes, 20 U.C.C.Rep.Serv. 524 (Bankr.E.D.Tenn. 1976); In re McTerry Corp., 8 U.C.C.Rep.Serv. 108 (Bankr.D.C.Conn. 1970).
In the McTerry case, both parties to the contract agreed to a substitution of collateral. Notation of substitution was made on the security agreement and on substituted certificates of title. In ruling that there was no substitution of collateral the court held:
 "There is no question as to what the parties intended. Had the original security agreement provided for a substitution of collateral the claim of the petitioner would be stronger. However, there was no such provision and the matter must be considered in the same light as though this was an original undertaking. By no stretch of the imagination can the original security agreement with notations thereon initialled by the secured party be interpreted as the written signature of the debtor." McTerry at 109.
Conversely, if the original security agreement does not contain a provision for substitution of collateral or if there is no subsequent "substitution of collateral" agreement, the debtor cannot require substitution of collateral.
If, upon the basis of this decision, the trial court does not:
(1) void, vacate or otherwise annul the temporary restraining order issued on 28 April 1982; and *Page 202 
(2) void, vacate or otherwise annul the preliminary injunction issued on 7 May 1982; and
(3) issue such orders as may be necessary to restore to Associates those title certificates that were delivered to Sanders in compliance with the order of the trial court of 28 April 1982; a writ to effectuate that action will, upon request of petitioner, be granted.
WRIT GRANTED CONDITIONALLY.
TORBERT, C.J., and FAULKNER, ALMON and ADAMS, JJ., concur.