Defendants Waterworks and Sewer Board of the City of Birmingham (the Board), Georgia-Pacific Corporation (Georgia-Pacific), Rex Timber, Inc. (Rex), and Randolph 
Randolph logging company (Randolph) appeal from a trial court's order continuing a temporary restraining order that the trial court had granted to enjoin the defendants from conducting destructive logging operations on land that the plaintiffs allegedly have a right to use for recreational purposes. Georgia-Pacific and Randolph also filed petitions for writ of mandamus, which we consolidated with the present appeal.
Plaintiffs, Edward T. Anderson, James G. Henderson, Charles Wingard, Cynthia Wingard, William C. Wood, Laura D. Wood, Alexander W. Jones, Jr., Marjorie M. Jones, John C. Hurst, Nona R. Hurst, Charles Workman, Edna G. Workman, Elias C. Watson, and Lucy T. Watson, are residential property owners in a rural section of South Jefferson County near the Cahaba River. The Board owns property adjacent to that of the plaintiffs. In April 1985, plaintiffs learned that the City of Birmingham proposed to annex their property and the Board's. Fearing that the annexation would cause a destruction of the natural state of the Board's property, the plaintiffs filed suit to prevent the annexation. Subsequently, the Board and the plaintiffs entered into an agreement that gave the plaintiffs a license to use the Board's property for recreational purposes. Defendants dispute the validity of the license agreement. However, because this appeal does not involve plaintiffs' entitlement to a preliminary injunction, the issue of the validity of the license agreement is not before us.
After the settlement agreement had been consummated, the Board entered into two timber contracts with defendant Rex, a wholly owned subsidiary of defendant Georgia-Pacific, in which the Board sold to Rex the timber on the land that was subject to the license agreement. Rex entered into two cutting and hauling contracts with defendant Randolph, which began logging operations on the land restricted by the license agreement on August 10, 1987.
Four days later, on Friday, August 14, at 5:00 p.m., the plaintiffs filed a verified complaint and an accompanying application for a temporary restraining order, alleging that the defendants' logging operations *Page 195 
were causing irreparable harm to plaintiffs' recreational rights embodied in the license in that the defendants' indiscriminate clear-cutting had devastated the once aesthetic woodlands and would devastate more of the property subject to the license agreement unless enjoined. Even though the plaintiffs knew the identity of the defendants and had adequate time within which to provide them with notice, at least telephone notice, the plaintiffs and the trial judge scheduled an ex parte hearing at 5:30 p.m.
After the ex parte hearing, the trial court granted a temporary restraining order, contingent upon the plaintiffs' giving security in the amount of $5,000, enjoining the defendants from continuing their logging operations on the property on which plaintiffs had a license. The trial court's order in part stated:
 "Upon consideration of the sworn Complaint and after hearing statements of counsel for Plaintiffs, the Court finds that unless Defendants are temporarily restrained the Plaintiffs will suffer immediate and irreparable injury. It is ORDERED that:
 "1. Upon Plaintiffs' giving security in the amount of FIVE THOUSAND DOLLARS ($5,000.00) with good and sufficient surety approved by the Register of this Court, or cash bond, Defendants, Water Works and Sewer Board of the City of Birmingham, City of Birmingham, Rex Timber, Inc., a corporation and wholly owned subsidiary of Georgia Pacific Corporation, James M. Vardaman Co., Inc., and Randolph Logging, are hereby restrained and enjoined from:
 "`(a) Continuing the present logging operations (including the cutting or removing of any more timber) on the property covered by the License Agreement and Covenant between the parties which were part of the settlement of the case styled Elias C. Watson, et al. v. City of Birmingham, et al., Case No. CV 85-502-009 WAT pending further orders of this Court.'"
In addition, the trial court set a hearing to consider plaintiffs' application for a preliminary injunction on August 24, 1987, at 9:30 a.m. and set the expiration date of the temporary restraining order at midnight on August 24, 1987, "unless within the time so fixed the order for good cause shown is extended or unless the defendants consent that it may be extended for a longer period." Plaintiffs posted a $5,000 bond on August 14, 1987.
In response to the trial court's order, on August 17, 1987, defendants Board and Randolph filed motions to assess damages and to dissolve the injunction and the defendant Georgia-Pacific filed a motion for relief from the temporary restraining order. The trial court set a hearing to evaluate the merits of the defendants' motions on August 19, 1987. The plaintiffs and the defendants presented testimony in support of their respective motions on August 19, 20, and 24. The trial court orally denied the defendants' motions, extended the temporary restraining order, and rescheduled the hearings on the motion for preliminary injunction for September 22, 1987. On August 26, 1987, the trial court entered a formal order denying the motions to dissolve, continuing the temporary restraining order "until the court rules on the merits of the preliminary injunction," and raising the bond to $10,000, and this appeal followed.
 Standard of Review and Issue
A trial judge has wide discretion in "deciding whether to grant a temporary injunction and his action will not be disturbed on appeal unless he abuses his discretion. . . . His discretion is a legal or judicial one subject to review for abuse or improper exercise, as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the controlling law." Chavers v. CopyProducts Co., 519 So.2d 942 (Ala. 1988); Alabama Educ. Ass'n v.Board of Trustees of University of Alabama, 374 So.2d 258, 260
(Ala. 1979). Thus, the primary issue on appeal is whether the trial court abused its discretion in denying the defendants' motions to dissolve and to assess damages and in continuing the temporary restraining order. We hold that the *Page 196 
trial court's August 26 order did not constitute an abuse of discretion.
 Discussion
Defendants argue that the trial court issued the temporary restraining order in violation of Rule 65 (b), Ala.R.Civ.P., which in pertinent part provides:
 "A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required."
First, pointing to the plaintiffs' undisputed ability to provide oral notice of the forthcoming hearing on August 14 at 5:30 p.m., defendants contend that they could have been "heard in opposition" before the plaintiffs would have incurred irreparable harm. Second, defendants contend that the plaintiffs' attorney failed to give the trial court a sufficient written certification of their efforts to provide notice and their reasons for not doing so. After careful consideration of the record and the applicable law, we disagree with the defendants' arguments.
We acknowledge the fact that the plaintiffs could have notified the defendants by telephone of their intention to seek injunctive relief under Rule 65 (b), and that their certification under Rule 65 (b)(2) could have been more explicit, but "this relief, known as a temporary restraining order, can be accorded without notice provided that the verified facts of the complaint clearly justify plaintiffs' apprehension about the threat of irreparable injury." Comments to Rule 65 (b), Ala.R.Civ.P.; Falk v. Falk, 355 So.2d 722
(Ala.Civ.App. 1978). The plaintiffs' verified complaint evinces their "apprehension about the threat of irreparable injury."
Pertinent sections of the complaint state as follows:
 "The defendants to this suit have commenced a logging operation on the property covered by the license agreement. Before commencing the logging operations, representatives of the Water Works Board of the City of Birmingham discussed the nature and extent of the timber to be cut with various
 plaintiffs. Defendant, Water Works Board of the City of Birmingham, represented, among other things, that no trees would be cut within 100 feet of the banks of the Cahaba River or Little Cahaba River and specifically represented that certain specifically designated and identified very large and old trees, particularly some trees near the boundaries of the plaintiffs' property, would not be cut. These representations have proven to be false as trees have been cut within 100 feet of the banks of the river, and trees specifically identified and agreed not to be cut have been felled.
 "The logging operation has been carried out by Rex Timber, Inc., James M. Vardaman Co., Inc. and Randolph Logging. The logging operation has been carried out in such a way that the property has been wasted and despoiled. Substantial areas of the property covered by the license agreement have been completely leveled and despoiled of vegetation. The effect of the logging operation carried out in this manner is to destroy the value of the license agreement the Water Works Board of the City of Birmingham and the City of Birmingham wrongfully withhold from plaintiffs.
". . .
 "The timbering operations have been carried out in such a manner as to make the property covered by the license agreement wrongfully withheld from plaintiffs unsuitable for recreational purposes.
 "Defendants, Water Works Board of the City of Birmingham and City of Birmingham, have breached and violated their agreement to deliver to plaintiffs the license and covenant without any justification. During the time the license *Page 197 
and covenant have been unjustifiably withheld, the defendants have begun to destroy the value of the license by so reducing the property covered by the license to wasteland that the license will not have practical value for recreational use for years. The character of the land covered by the license is being so substantially changed that the obvious intent of the agreement is being thwarted. Defendants, City of Birmingham and Water Works Sewer Board of the City of Birmingham, have deliberately, willfully, and intentionally failed and refused to live up to and comply with the agreements they made in resolving the previous suit.
". . .
 "The plaintiffs have already been irreparably damaged and their irreparable damage is continuing and increasing and will continue and increase if the actions of the defendants are not immediately halted. Plaintiffs do not have an adequate remedy at law.
 "Plaintiffs allege that unless this Court grants an order restraining the defendants from removing any more timber from the property made reference to herein, before notice can be served and a hearing had thereon and before defendants can be heard in opposition, plaintiffs will suffer immediate and irreparable loss and damage.
 "Plaintiffs' attorneys certify that there is not sufficient time to give notice to the defendants and the giving of notice to defendants would be an exercise in futility for defendants have already been requested to restrain from cutting said timber."
Despite the plaintiffs' specific factual allegations of irreparable harm arising from the defendants' logging operations, defendants contend that, because plaintiffs failed to comply strictly with Rule 65 (b), they were not entitled to injunctive relief. Defendants predicate their argument on a highly technical construction of the language embodied in Rule 65 (b), which, in our opinion, would work against the policy of liberally construing the Rules of Civil Procedure. See Rule 1 (c). A mechanical construction of Rule 65 (b) could defeat the purpose for which it was designed — to maintain the status quo amid a threat of irremediable injury.
A temporary restraining order is an equitable remedy, requiring the trial court to balance the equities of the parties. As we stated in Union Springs Telephone Co v. Green,285 Ala. 114, 229 So.2d 503 (1969), "when considering the dissolution of a temporary injunction . . . the court is vested with wide discretion, and will weigh the relative degrees of injury and benefit to the respective parties which may ensue from the maintenance of the injunction on the one hand, or its dissolution on the other." In view of the facts set forth by the plaintiffs in their verified complaint, which clearly show the threat of irreparable injury, the trial court's conclusion that the benefits to the plaintiffs in continuing the restraining order outweighed the injuries to the defendants in denying its dissolution was not an abuse of discretion. The record indicates that the plaintiffs knew that Randolph intended to cut timber on August 15. Thus, unless the trial judge issued the temporary restraining order on August 14, the plaintiffs could have suffered further irreparable harm. Under these facts, the defendants could not have been "heard in opposition" before the plaintiffs suffered irreparable injury. Rule 65 (b) (emphasis added). Therefore, the trial judge properly granted the temporary restraining order to preserve the status quo. Moreover, by filing a verified complaint with specific facts showing the threat of irreparable injury and by providing the trial court with a written certification, the plaintiffs invoked the jurisdiction of the trial court under Rule 65 (b), Ala.R.Civ.P. Ex parte Associates Commercial Corp.,423 So.2d 195 (Ala. 1982).
Defendants next contend that the trial court did not require the plaintiffs to give adequate security supported by a surety and thereby erred. This argument is also untenable. Rule 65 (c) provides:
 "No restraining order or preliminary injunction shall issue except upon the *Page 198 
giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs, damages, and reasonable attorneys fees as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained; provided, however, no such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases." (Emphasis added)
Rule 65 (c), by its plain language, empowers a trial court with the discretion to set security at an appropriate amount; it does not require a surety. Our decisions support this interpretation. In Lightsey v. Kensington Mortgage FinanceCorp., 294 Ala. 281, 315 So.2d 431, 434 (1975), we stated that, as a general rule, a trial court must require the giving of security before issuing a temporary restraining order but that some exceptions, such as cases involving impecunious litigants or issues of overriding public concern, warrant a requirement of no security or only nominal security. This statement presupposes that trial courts have the discretion to require the applicant to provide an amount of security that it "deems proper." Historically, we have left it to the trial court's discretion in setting bond and have reversed only upon a "clear showing of an abuse of discretion in fixing the amount of" the bond. Willowbrook Country Club, Inc. v. Ferrell, 286 Ala. 281,239 So.2d 298 (1970). In the case at hand, the plaintiffs gave security in the amount of $10,000. Although the defendants testified that they would incur damages substantially in excess of $10,000, we cannot say this amount constitutes a clear abuse of discretion and "consequently we will not substitute our judgment for that of the trial judge." Willowbrook CountryClub, supra, 286 Ala. at 286, 239 So.2d at 302.
We are not reviewing a final judgment rendered after a full hearing on the merits. The plaintiffs' entitlement to preliminary injunctive relief is an issue that lies within the province of the trial court. The validity of the license agreement as well as other issues, such as the bona fide purchaser status of Rex Timber and Randolph, can be resolved during the hearing for preliminary injunction. The evidence may show that the plaintiffs are not entitled to a preliminary injunction. But, at this stage of the litigation, we merely hold that the temporary restraining order enjoining the defendants from continuing their logging operations on property subject to plaintiffs' recreational license did not constitute an abuse of discretion by the trial court. We, therefore, affirm the trial court's order, with directions to continue hearings on plaintiffs' application for a preliminary injunction.
AFFIRMED WITH DIRECTIONS.
MADDOX, JONES, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.