On Applications for Rehearing

LYONS, Justice.
This Court’s opinion of January 25, 2008, is withdrawn, and the following is substituted therefor.
Champion Home Builders Company; Champion Homes of Boaz, Inc.; Homes of Merit, Inc.; CMH Manufacturing, Inc.; and Clayton Homes, Inc., all mobile-home manufacturers and sellers (hereinafter sometimes referred to collectively as “the mobile-home companies”), instituted two separate declaratory-judgment actions in separate judicial circuits[1] against certain mobile-home owners who had previously instituted arbitration proceedings before *878 the American Arbitration Association (“the AAA”), seeking to prevent the homeowners from proceeding with claims before the AAA brought on behalf of other similarly situated mobile-home owners. The homeowners’ AAA proceedings sought class arbitration in Montgomery County for a class of Alabama mobile-home owners.
After filing the declaratory-judgment complaints in the Dale Circuit Court and the Geneva Circuit Court, the mobile-home companies asked the AAA and the law firm representing the homeowners in the AAA proceedings to stay those proceedings, which were being conducted in Montgomery County, pending the disposition of the declaratory-judgment actions. Those requests were denied, and the mobile-home companies filed motions in their separate declaratory-judgment actions asking the trial judge to stay the AAA proceedings in Montgomery County. The trial judge granted the mobile-home companies’ motions, and the homeowners petitioned this Court for a writ of prohibition or, alternatively, a writ of mandamus. We grant the petitions and issue the writs of mandamus.
I. Factual Background and Procedural History
A. Case no. 1061760
We first address the declaratory-judgment action brought in the Dale Circuit Court by Champion Home Builders Company; Champion Homes of Boaz, Inc.; and Homes of Merit, Inc. (“the Dale mobile-home companies”).
Sabrina Johnson, William Baker, Corine Crittenden, Albert Fritzke, Faye Fritzke, Larry Hutto, Sheila Hutto, Huey Nelson, and Cynthia Nelson (“the Dale homeowners”) filed their complaint in arbitration with the AAA on December 22, 2006, asserting various claims relating to allegedly improper design and manufacture of mobile homes they had purchased. The Dale homeowners requested that the AAA permit arbitration of claims on behalf of a class of “thousands of [Alabama] homeowners who unwittingly purchased manufactured homes built by [the mobile-home companies] that were fundamentally defective for the jurisdictions in which they lived,” and they alleged that “[t]he walls of their homes are literally rotting away as a result of a pervasive defect in their construction that [the mobile-home companies] have known about but failed to correct.” Dale homeowners’ petition at 6; arbitration complaint at 2.
On May 8, 2007, the Dale mobile-home companies commenced their declaratory-judgment action in the Dale Circuit Court against the Dale homeowners. The Dale mobile-home companies asked the trial court to declare that the Dale homeowners must individually arbitrate their previously instituted arbitration claims in accordance with the arbitration provision of each mobile-home company’s contract, a provision that contains a forum-selection clause that requires arbitration to take place in the jurisdiction of the original retail sale of the mobile home; to declare the Dale homeowners’ previously instituted class-action arbitration complaint to be contrary to Alabama law, impermissible, and a breach of the contracts between the Dale mobile-home companies and the Dale homeowners; and to compel the Dale homeowners to arbitrate their claims individually in the correct jurisdiction.
The Dale mobile-home companies state in their declaratory-judgment complaint that the arbitration agreement contained in the contracts executed by Johnson, Crit-tenden, and the Nelsons (“the Dale contract 1”) provides:
“ARBITRATION AND LIMITATION OF REMEDIES. It is agreed *879 that any controversy, claim or dispute between or among the Manufacturer, homeowner, independent dealer, finance company or any other person or entity arising from or relating to the Manufactured Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition, the manufacturer’s limited warranty, any contract or any alleged promise, representation, agreement or instrument relating to or delivered in connection with the Manufactured Home, or any alleged breach thereof, and any claim based on or arising from an alleged tort or claim of any kind whatsoever, including any claim relating to the validity of this arbitration and limitation of remedies provision [collectively ‘Claim(s)’], and if the Claim(s) cannot be resolved through direct discussion or negotiations, the Claim(s) first shall be mediated as administered by the American Arbitration Association under its Commercial Mediation Rules before resorting to binding arbitration.[2] Thereafter, any unresolved Claim(s) shall be settled by binding arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules, and any judgment on the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. ... All mediation or arbitration proceedings shall be conducted in the jurisdiction of the original retail sale or at any other place selected by agreement of all parties.”
The Dale mobile-home companies further state in their declaratory-judgment complaint that “[t]he operative language of the Arbitration Agreements provided to the remaining defendants [Baker, the Fritz-kes, and the Huttos] is substantively the same [as the agreements provided to Johnson, Crittenden, and the Nelsons].” Complaint at 5. The materials submitted in this mandamus proceeding by the Dale homeowners and the Dale mobile-home companies include a document entitled “Manufacturer’s Limited Warranty & Arbitration Agreement.” Although the parties include this document as an exhibit without identifying it further, it appears to be the arbitration agreement provided to Baker, the Fritzkes, and the Huttos (“the Dale contract 2”). This document provides:
“ARBITRATION AGREEMENT: It is agreed that any controversy, claim or dispute between or among the Manufacturer, homeowner, independent dealer, finance company or any other person or entity arising from or relating to the Manufactured Home, its sale, transportation, setup, repair, installation, use, design, manufacture, financing, insurance, any other condition, the manufacturer’s limited warranty, any contract or any alleged promise, representation, agreement or instrument relating to or delivered in connection with the Manufactured Home, or any alleged breach thereof, and any claim based on or arising from an alleged tort or claim of any kind whatsoever, including any claim relating to the validity of this arbitration and limitation of remedies provision [collectively ‘Claim(s)’], and if the Claim(s) cannot be resolved through direct discussion or negotiations, — and unless the parties otherwise agree on a different mediation or arbitration process — then *880 the Claim(s) first shall be mediated as administered by the American Arbitration Association (‘AAA’) under its applicable mediation Rules before resorting to binding arbitration. Thereafter, any unresolved Claim(s) shall be settled by binding arbitration administered by the AAA in accordance with its applicable arbitration Rules for such Claim(s), and any judgment on the award rendered by the arbitrator(s) may be entered in any Court having jurisdiction thereof. The parties reserve their rights to resolve the Claim(s) in an applicable small claims court for disputes or Claim(s) within the scope of the small claims court’s jurisdiction. ... All mediation or arbitration proceedings shall be conducted in the jurisdiction of the original retail sale or any other place selected by agreement of all parties.
[[Image here]]
“A copy of the applicable Rules of the AAA is available upon request by contacting the American Arbitration Association [at an address or Web site provided].”
The Dale contract 1 specifically designates the Commercial Arbitration Rules of the AAA as applicable to the pending arbitration proceedings. The Dale contract 2 designates “its [the AAA’s] applicable arbitration Rules” as applicable to the pending arbitration proceedings. None of the parties in case no. 1061760 argues that the Commercial Arbitration Rules of the AAA do not apply to these proceedings.
B. Case no. 1061762
We next address the declaratory-judgment action brought in the Geneva Circuit Court by CMH Manufacturing, Inc., and Clayton Homes, Inc. (“the Geneva mobile-home companies”).
Lamar Jenkins, Patricia Jenkins, Robert Knighten, and Sharon Tate (“the Geneva homeowners”) filed their complaint in arbitration with the AAA on December 22, 2006, asserting various claims relating to allegedly improper design and manufacture of mobile homes they had purchased. Like the Dale homeowners, the Geneva homeowners requested that the AAA permit arbitration of claims on behalf of a class of “thousands of [Alabama] homeowners who unwittingly purchased manufactured homes built by [the mobile-home companies] that were fundamentally defective for the jurisdictions in which they lived,” and they alleged that “[t]he walls of their homes are literally rotting away as a result of a pervasive defect in their construction that [the mobile-home companies] have known about but failed to correct.” Geneva homeowners’ petition at 6; arbitration complaint at 1. The Geneva homeowners’ initial arbitration complaint attached the wrong contract and was rejected by the AAA, but on April 2, 2007, the Geneva homeowners resubmitted the complaint with the proper contract attached.
On February 2, 2007, the Geneva mobile-home companies commenced their declaratory-judgment action in the Geneva Circuit Court against the Geneva homeowners. In the complaint, Clayton Homes alleged that it was “making a special appearance subject to and without waiving all objections as to personal jurisdiction.” [3] Declaratory-judgment complaint at 1. The Geneva mobile-home companies asked the trial court to declare that the arbitration provision in CMH’s *881 contracts with the Geneva homeowners does not obligate them “to arbitrate class claims”; to enjoin the Geneva homeowners from proceeding with previously instituted class arbitration; to dismiss the Geneva homeowners’ previously instituted class-action arbitration complaint; and to compel the Geneva homeowners to proceed with individual arbitration according to the terms of their contracts.
The Geneva mobile-home companies state in their response to the Geneva homeowners’ petition that the arbitration agreement contained in the contracts executed by the Geneva homeowners (“the Geneva contract”) provides:
“Any dispute or claim relating to your manufactured home (‘Manufactured Home’), whether based in contract, tort or otherwise, at the request of you or CMH shall be resolved by BINDING ARBITRATION in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) or any more applicable or appropriate rules then in effect and the Federal Arbitration Act (9 U.S.C. § 1, et seq.). ... All issues concerning whether or the extent to which a dispute or claim is subject to arbitration, including issues relating to the enforceability of this section, shall be determined by the arbitrator(s), or by a court of competent jurisdiction without a jury. If a dispute or claim is not subject to arbitration, then such dispute or claim shall be decided in a court of competent jurisdiction WITHOUT A JURY. ...”
(Capitalization in original.) The Geneva contract specifically designates the Commercial Arbitration Rules of the AAA as applicable to the pending arbitration proceedings. None of the parties argues that the Commercial Arbitration Rules of the AAA do not apply to these proceedings, but the Geneva mobile-home companies argue that the Geneva contract does not exclusively incorporate the AAA rules.
II. Standard of Review
The homeowners contend that the Dale Circuit Court and the Geneva Circuit Court lack jurisdiction and authority to stay the arbitration proceedings. Consequently, they seek a writ of prohibition or, in the alternative, a writ of mandamus from this Court directing the trial judge to vacate his orders staying the arbitration proceedings and to dismiss the declaratory-judgment actions brought by the mobile-home companies. Although the normal basis upon which this Court reviews orders granting or denying arbitration is by way of direct appeal, see Rule 4(d), Ala. RApp. P., in this proceeding, the homeowners’ contention that the trial court lacks subject-matter jurisdiction is appropriately reviewed by way of a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000).
This Court’s standard of review applicable to a petition for a writ of mandamus [4] is well settled:
*882 “ ‘ “Mandamus is an extraordinary-remedy and requires a showing that there is ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ” ’
“Ex parte Inverness Constr. Co., 775 So .2d 153, 156 (Ala.2000).”
Ex parte Medical Assurance Co., 862 So.2d 645, 649 (Ala.2003).
III. Analysis
The homeowners contend that because all the contracts in these cases incorporate the Commercial Arbitration Rules of the AAA, the trial court does not have jurisdiction to decide arbitrability in these cases. A declaratory-judgment action, they argue, must “settle a bona fide justiciable controversy,” Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003), and because these contracts incorporate the Commercial Arbitration Rules of the AAA, thereby providing that questions of arbitrability are reserved for the arbitrator, there is, the homeowners contend, no case or controversy before the trial court. The homeowners contend that the Commercial Arbitration Rules of the AAA require that whether a dispute is susceptible of class-action treatment must first be determined by the arbitrator. They state: “An appropriate time to bring an action to determine whether Alabama law prohibits class arbitration is subsequent to an arbitrator’s ruling that the arbitration agreement does or does not allow class-wide arbitration.” Dale homeowners’ petition, p. 16; Geneva homeowners’ petition, p. 15.
The Commercial Arbitration Rules of the AAA provide:
“R-l. Agreement of Parties
“(a) The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association (hereinafter AAA) under its Commercial Arbitration Rules or for arbitration by the AAA of a domestic commercial dispute without specifying particular rules. These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA. The parties, by written agreement, may vary the procedures set forth in these rules. After appointment of the arbitrator, such modifications may be made only with the consent of the arbitrator.
[[Image here]]
“R-7. Jurisdiction
“(a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.”
The Supplementary Rules for Class Arbi-trations of the AAA provide:
“3. Construction of the Arbitration Clause
“Upon appointment, the arbitrator shall determine as a threshold matter, in a reasoned, partial final award on the construction of the arbitration clause, whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class (the ‘Clause Construction Award’). The arbitrator shall stay all proceedings following the issuance of the Clause Construction Award for a period of at least 30 days to permit any party to move a court of competent jurisdiction to confirm or to vacate the Clause Construction Award. Once all parties inform the arbitrator in *883 writing during the period of the stay that they do not intend to seek judicial review of the Clause Construction Award, or once the requisite time period expires without any party having informed the arbitrator that it has done so, the arbitrator may proceed with the arbitration on the basis stated in the Clause Construction Award. If any party informs the arbitrator within the period provided that it has sought judicial review, the arbitrator may stay further proceedings, or some part of them, until the arbitrator is informed of the ruling of the court.
“In construing the applicable arbitration clause, the arbitrator shall not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis.”
A. Case no. 1061760
The Dale mobile-home companies argue that as a court of general jurisdiction, the trial court has jurisdiction over disputes involving the interpretation and enforcement of contracts. Rose v. Delaney, 576 So.2d 232, 233 (Ala.1991). Relying on Unum Life Insurance Co. of America v. Wright, 897 So.2d 1059, 1074 (Ala.2004), they contend that this Court “has specifically recognized declaratory judgment actions as acceptable means for obtaining an order compelling arbitration in accordance with the terms of an arbitration agreement.” Dale mobile-home companies’ principal brief at 13. They argue that the trial court had jurisdiction to interpret and enforce the venue-selection clause in the arbitration agreements and that the trial court, not an arbitrator, should decide whether class arbitration is permitted under these agreements. They then argue that Alabama law prohibits class arbitration.
We first address whether an arbitrator or a court is authorized to decide the arbitrability of certain threshold issues in this case, i.e., class-wide arbitration and the effect of contractual provisions in the arbitration agreements governing venue of individual arbitration claims in light of a contractual provision in those same agreements embracing rules permitting class-wide arbitration. This Court requires a trial court to permit arbitration of the issue of arbitrability “when the plain language of the agreement unquestionably shows that the parties agreed to arbitrate the issue of arbitrability.” Smith v. Mark Dodge, Inc., 934 So.2d 375, 379 (Ala.2006). We have held that “an arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbi-trability clearly and unmistakably evidences the parties’ intent to arbitrate the scope of the arbitration provision.” Citi-Financial Corp., L.L.C. v. Peoples, 973 So.2d 332, 340 (Ala.2007).
The Dale contract 1 specifically incorporates the Commercial Arbitration Rules of the AAA; the Dale contract 2 incorporates the AAA’s “applicable arbitration Rules” and, in light of the absence of any argument to the contrary, we construe the “applicable” AAA rules to be the Commercial Arbitration Rules. Consequently, both the Dale contract 1 and the Dale contract 2 confer jurisdiction upon the AAA to make an initial determination as to “whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.” Supplementary Rules for Class Arbitrations of the AAA, Rule 3. By agreeing to be bound by the AAA’s Commercial Arbitration Rules, the Dale homeowners and the Dale mobile-home companies conferred upon the arbitrator the authority to determine the scope of the arbitration agreement as it relates to the availability of class-wide arbitration.
*884 The Dale mobile-home companies contend that Rule 3 of the AAA’s Supplementary Rules applies only to purported class members who signed their respective arbitration agreements after October 8, 2003, the date upon which Supplementary Rule 3 was adopted. They cite no authority for such a proposition; moreover, the proposition conflicts with Rule 1(a) of the AAA’s Commercial Arbitration Rules, which provides: “These rules and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration or submission agreement received by the AAA.” (Emphasis added.)
The Dale mobile-home companies note that Supplementary Rule 3 provides that, “[u]pon appointment, the arbitrator shall determine ... whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.” They say, again without citation to authority, that because no arbitrator has yet been appointed, Supplementary Rule 3 is without a field of operation. Assuming that the appointment of an arbitrator creates a condition precedent to be fulfilled rather than merely designates the stage of the proceedings when the issue of class-wide arbitrability is to be resolved,[5] the Dale mobile-home companies are estopped from taking advantage of the fact that no arbitrator has yet been appointed. See World’s Exposition Shows, Inc. v. B.P.O. Elks, No. 148, 237 Ala. 329, 332, 186 So. 721, 724 (1939), in which the Court quoted with approval 3 Williston on Contracts § 677: “ ‘It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.’ ” The Dale mobile-home companies’ subjugation to the authority of an arbitrator to resolve the issue of class-wide arbitrability as provided through incorporation of the AAA’s Commercial Arbitration Rules or the AAA’s “applicable arbitration Rules” in the contracts between the parties has not yet occurred because the mobile-home companies obtained a stay of the proceedings, thereby preventing the appointment of an arbitrator.
For all that appears, the arbitrator, upon appointment, will make a determination favorable to the mobile-home companies. Until such time as an arbitrator is appointed, any attempt to obtain a declaratory judgment as to a hypothetical future controversy is beyond the subject-matter jurisdiction of the circuit courts. See Bedsole v. Goodloe, 912 So.2d 508, 518 (Ala.2005):
“The Declaratory Judgment Act, §§ 6-6-220 through -232, Ala.Code 1975, ‘does not “ ‘empower courts to ... give advisory opinions, however convenient it might be to have these questions decided for the government of future cases.’ ” ’ Bruner v. Geneva County Forestry Dep’t, 865 So.2d 1167, 1175 (Ala.2003) (quoting Stamps v. Jefferson County Bd. of Educ., 642 So.2d 941, 944 (Ala.1994) (quoting in turn Town of Warrior v. Blaylock, 275 Ala. 113, 114, 152 So.2d 661, 662 (1963))) (emphasis added in Stamps). This Court has em *885 phasized that declaratory-judgment actions must ‘settle a “bona fide justiciable controversy.” ’ Baldwin County v. Bay Minette, 854 So.2d 42, 45 (Ala.2003) (quoting Gulf South Conference v. Boyd, 369 So.2d 553, 557 (Ala.1979)). The controversy must be ‘ “definite and concrete,” ’ must be ‘ “real and substantial,” ’ and must seek relief by asserting a claim opposed to the interest of another party ‘ “upon a state of facts which must have accrued.” ’ Baldwin County, 854 So.2d at 45 (quoting Copeland v. Jefferson County, 284 Ala. 558, 561, 226 So.2d 385, 387 (1969)). “‘Declaratory judgment proceedings will not lie for an ‘anticipated controversy.’ ” ’ Creola Land Dev., Inc. v. Bentbrooke Housing, L.L.C., 828 So.2d 285, 288 (Ala.2002) (quoting City of Dothan v. Eighty-Four West, Inc., 738 So.2d 903, 908 (Ala.Civ.App.1999)). Thus, if a declaratory judgment would not terminate any uncertainty or controversy, the court should not enter such a judgment. Bruner, 865 So.2d at 1175.
“ ‘ “[JJusticiability is jurisdictional,” Ex parte State ex rel. James, 711 So.2d [952,] 960 n. 2 (Ala.1998); hence, if necessary, “this Court is duty bound to notice ex mero motu the absence of subject matter jurisdiction.” ’ Baldwin County, 854 So.2d at 45 (quoting Stamps, 642 So.2d at 945 n. 2).”
The United States Supreme Court recognizes a strong federal policy favoring arbitration.
“The [Federal] Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbi-trable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.”
Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (footnote omitted). That the contracts in this case call for an arbitrator to make the initial determination “whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class” is ample reason for this Court to decline to rewrite the agreements to suit the preference of one of the parties for an immediate judicial determination. Such indifference to the unambiguous terms of a written agreement is contradictory to settled principles of Alabama contract law. See, e.g., Sloan Southern Homes, LLC v. McQueen, 955 So.2d 401, 404 (Ala.2006) (“ ‘ “A court may not make a new contract for the parties or rewrite their contract under the guise of construing it.” ’ ” (quoting Turner v. West Ridge Apartments, Inc., 893 So.2d 332, 335 (Ala.2004), quoting in turn Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 35-36 (Ala.1998))); Mutual Sav. Life Ins. Co. v. James River Corp. of Virginia, 716 So.2d 1172, 1178 (Ala.1998) (“A broader interpretation of the transaction would effectively rewrite the contract to give the investors more than they bargained for in an arm’s-length transaction between sophisticated parties.”); and Ex parte Associates Commercial Corp., 423 So.2d 195, 200 (Ala.1982) (“The pivotal rule that lies at the core of this case is that which says no court can rewrite the terms of a plain and unambiguous contract.”). We cannot create unique rules of contract law applicable only to arbitration agreements. Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).
The Dale mobile-home companies contend that a provision in both of the Dale contracts limits the venue of any disputes to the jurisdiction where the retail sale of the mobile home occurred. *886 They insist that even if the trial court does not have jurisdiction to make the initial determination as to whether the arbitration may proceed on behalf of a class, the trial court has jurisdiction to enforce the venue-selection clause in the Dale contracts. We note that Montgomery County was the jurisdiction of the retail sale as to only two of the nine Dale homeowners. The Dale homeowners contend that the venue provision is superseded by the availability of class-wide treatment of the claims.
The Dale mobile-home companies rely on Sterling Financial Investment Group, Inc. v. Hammer, 393 F.3d 1223, 1225 (11th Cir.2004) (“[A] federal district court, pursuant to 9 U.S.C. § 4, has jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators.”). The Dale mobile-home companies also cite Redman Home Builders Co. v. Lewis, 513 F.Supp.2d 1299, 1311 (S.D.Ala.2007), in which the United States District Court for the Southern District of Alabama declined to limit Sterling Financial to instances where an arbitrator has previously disregarded the forum-selection clause. This Court is not bound by decisions of the United States Courts of Appeals or the United States District Courts; moreover, we conclude that Sterling Financial is distinguishable and that the reasoning in Lewis is not persuasive. Sterling Financial authorizes a trial court to enforce a forum-selection clause in an arbitration agreement if the clause has been disregarded by an arbitrator, a situation that has not yet occurred, and may not occur, in this case. Lewis involved, as does this case, a predicate issue, susceptibility to class-action treatment, in which the venue issue is embedded, which issue the parties have agreed to submit to an arbitrator initially with a subsequent right of interlocutory review in a judicial forum.[6]
Any attempt to obtain a declaratory judgment as to the venue provision in the Dale contracts is also a hypothetical future controversy that is beyond the subject-matter jurisdiction of the circuit courts. See Bedsole v. Goodloe, 912 So.2d at 518.
B. Case no. 1061762
The Geneva mobile-home companies argue that the trial court has jurisdiction to determine its own jurisdiction, Ex parte Textile Workers Union, 249 Ala. 136, 30 So.2d 247 (1947), and that justiciable controversies exist here, i.e., whether the Geneva mobile-home companies are obligated to arbitrate class claims and whether the court or an arbitrator has the authority to decide the class-treatment issue. The Geneva mobile-home companies also argue that the Geneva contract does not exclusively incorporate the Commercial Arbitration Rules of the AAA and that the Geneva contract expressly provides for a trial court to interpret that contract. They then argue that Alabama law prohibits class arbitration.
We first examine whether the Geneva contract incorporates the Commercial Arbitration Rules of the AAA. The contract provides that any “dispute or claim” is to be resolved by arbitration “in accordance with the Commercial Rules of the [AAA] or any more applicable or appropriate rules then in effect.” The Geneva mobile-home companies argue that because the Geneva contract does not incor *887 porate the Commercial Arbitration Rules exclusively, the parties “did not select in advance the specific procedures that may be employed for their arbitration.” Geneva mobile-home companies’ principal brief at 19. The Geneva mobile-home companies do not suggest what other “applicable or appropriate rules” might govern the Geneva homeowners’ dispute or claim. They then argue:
“Although [the Geneva homeowners] may have chosen the Supplemental Rules after a dispute arose, the parties did not intend for those rules in particular to apply when they entered into the [Geneva contract]. Indeed, the Supplementary Rules did not exist when Petitioner Sharon Tate entered into the [Geneva contract]. They came into effect nearly four months later.”
Geneva mobile-home companies’ principal brief at 19 (footnote omitted).
As we pointed out in Section III.A. above, Rule 1(a) of the Commercial Arbitration Rules of the AAA provides that the AAA rules “and any amendment of them shall apply in the form in effect at the time the administrative requirements are met for a demand for arbitration .... ” We conclude that the Geneva contract, by providing that any dispute or claim under the Geneva contract is to be resolved by arbitration conducted pursuant to the Commercial Arbitration Rules of the AAA “or any more applicable or appropriate rules then in effect,” incorporates the AAA’s Commercial Arbitration Rules together with the Supplemental Rules adopted on October 8, 2003. We have previously noted the strong federal policy favoring arbitration recognized by the United States Supreme Court. See, e.g., Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). That policy would not be served by construing the Geneva contract as allowing some nebulous, undefined, unnamed rules to govern instead of the specified Commercial Arbitration Rules of the AAA “then in effect.” Rule 1(a) does allow the parties, “by written agreement,” to “vary the procedures set forth in these rules.” No such written agreement appears in the materials before us, and the Geneva mobile-home companies do not contend that any such agreement exists.
We view the reference to “any more applicable or appropriate rules then in effect” as nothing more than an acknowledgment of the parties’ right to agree subsequently to be bound by rules that they might later deem more applicable or appropriate. In the absence of any subsequent agreement, we conclude that the Geneva contract specifically incorporates the Commercial Arbitration Rules of the AAA.
The Geneva mobile-home companies also argue that the Geneva contract “expressly provides that a party may choose a court for the interpretation” of the contract. Geneva mobile-home companies’ principal brief at 16. Therefore, they argue, they chose a “court of competent jurisdiction to determine whether the class claims are subject to arbitration.” Geneva mobile-home companies’ principal brief at 17. In insisting that the Geneva contract allows either an arbitrator or a court to interpret the contract, the Geneva mobile-home companies rely on the following sentence in the Geneva contract: “All issues concerning whether or the extent to which a dispute or claim is subject to arbitration, including issues relating to the enforceability of this section, shall be determined by the arbitrator(s), or by a court of competent jurisdiction without a jury.” This sentence is preceded by the following sentence:
“Any dispute or claim relating to your manufactured home (‘Manufactured *888 Home’), whether based in contract, tort or otherwise, at the request of you or CMH shall be resolved by BINDING ARBITRATION in accordance with the Commercial Arbitration Rules of the American Arbitration Association (AAA) or any more applicable or appropriate rules then in effect and the Federal Arbitration Act (9 U.S.C. § 1, et seq.).”
(Capitalization in original.) Reading the two sentences in context, the sentence upon which the Geneva mobile-home companies rely simply allows the arbitrator or the court to resolve disputes as to the extent to which the Geneva homeowners’ claims are subject to arbitration. None of the parties in this case dispute the susceptibility of the Geneva homeowners’ claims to arbitration. The dispute here is whether claims of other homeowners can be included in a class. Consequently, the sentence in the Geneva contract that allows an arbitrator or a court to determine whether a dispute or claim is “subject to arbitration” simply does not support the Geneva mobile-home companies’ argument that the trial court, and not an arbitrator, is authorized to decide whether class-wide arbitration applies to the Geneva homeowners’ claims.
Having concluded that the Geneva contract incorporates the Commercial Arbitration Rules of the AAA and that it does not remove from an arbitrator the authority to decide the issue of arbitrability, we hold that the Geneva contract, like the Dale contracts, confers jurisdiction upon the AAA to make an initial determination as to “whether the applicable arbitration clause permits the arbitration to proceed on behalf of or against a class.” Supplementary Rules for Class Arbitrations of the AAA, Rule 3. For the reasons discussed in Section III.A. above, the Geneva mobile-home companies and the Geneva homeowners have conferred upon the arbitrator the authority to determine the scope of the arbitration agreement as it relates to the availability of class-wide arbitration, and until such time as the arbitrator has made such a determination, any attempt to obtain a declaratory judgment as to a controversy is a hypothetical one that at this point is beyond the subject-matter jurisdiction of the circuit court.
IV. Conclusion
We express no opinion on the myriad defenses to class-wide treatment of the claims and the venue of any such class-wide proceeding pending before the AAA raised by the mobile-home companies in the proceedings pending in the Dale and Geneva Circuit Courts. Such defenses must first be asserted before the AAA pursuant to the arbitration agreements between the parties. The trial judge lacked jurisdiction to become involved in this dispute over the susceptibility of the claims to class-wide treatment in proceedings in Montgomery County in the absence of a determination adverse to the mobile-home companies in the proceedings before the AAA, an event that has not, and may not, occur. Because we hold that the trial court lacks jurisdiction over these cases, they must be dismissed rather than placed on the trial court’s administrative docket, as the mobile-home companies argue is more appropriate. A controversy that is not justiciable implicates subject-matter jurisdiction, and a court that lacks subject-matter jurisdiction has no power to take any action other than to dismiss the action; any other action it takes is void. Ex parte Alabama Dep’t of Transp., 978 So.2d 17 (Ala.2007).
We conclude that under the facts of this case a writ of mandamus is the appropriate remedy by which to order a vacatur of the trial judge’s void orders. Because we have no basis on which to conclude that the trial court will not comply with our *889 mandate, we decline to issue the alternative writs of prohibition. We direct the trial court to vacate its orders staying the proceedings before the AAA and to enter an order of dismissal in each action.
1061760 — APPLICATION OVERRULED; OPINION OF JANUARY 25, 2008, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.
1061762 — APPLICATION OVERRULED; OPINION OF JANUARY 25, 2008, WITHDRAWN; OPINION SUBSTITUTED; PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and STUART, BOLIN, and MURDOCK, JJ., concur.

. The separate actions were assigned to the same trial judge.

2. The Dale mobile-home companies allege in their declaratory-judgment complaint that the Dale homeowners never made any attempt to mediate their disputes before they filed their arbitration complaint. The Dale homeowners state in their petition for the writ of mandamus that the parties participated in mediation after the declaratory-judgment complaint was filed but that they were unable to resolve their disputes.

. The Geneva homeowners filed with the AAA a notice of dismissal without prejudice of their claims against Clayton Homes, Inc., after the commencement of the Geneva County action. Clayton Homes states, however, in the response to the Geneva homeowners' petition for a writ of mandamus, that it has not yet been dismissed by the AAA.

. This Court's standard of review applicable to a petition for a writ of prohibition is similar to the standard of review applicable to a petition for a writ of mandamus:
" 'Like mandamus, prohibition is an extraordinary writ, "and will not issue unless there is no other adequate remedy.” Ex parte K.S.G., 645 So.2d 297, 299 (Ala.Civ.App.1992) (citing Ex parte Strickland, 401 So.2d 33 (Ala.1981)). "Prohibition is proper for the prevention of a usurpation or abuse of power where a court undertakes to act in a manner in which it does not properly have jurisdiction." Ex parte K.S.G., 645 So.2d at 299/
“Ex parte Sealy, L.L.C., 904 So.2d 1230, 1232-33 (Ala.2004).”
Ex parte Scrushy, 940 So.2d 290, 293 (Ala.2006).

. See Gertz v. Allen, 376 So.2d 695, 697 (Ala.1979) (“Whether a provision in a contract is a condition precedent is dependent, not upon formal words, but upon the intent of the parties to be determined from the entire contract.”); Federal Ins. Co. v. I. Kruger, Inc., 829 So.2d 732, 740 (Ala.2002), quoting with approval Koch v. Construction Tech., Inc., 924 S.W.2d 68, 69 (Term. 1996) (" ‘First, it is well-established that condition precedents are not favored in contract law, and will not be upheld unless there is clear language to support them.' ”).

. In proceedings before the arbitrator dealing with whether class-wide arbitration is available in this case, the Dale mobile-home companies can argue any inconsistency between the venue provisions in the Dale contracts and the AAA’s Supplementary Rule 3 and then urge the supremacy of the venue provisions in the arbitration agreements. See Szuts v. Dean Witter Reynolds, Inc., 931 F.2d 830, 831-32 (11th Cir.1991).